UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RELIANCE INSURANCE COMPANY OF ILLINOIS,<br>        Plaintiff,<br><br>    vs.<br><br>RAYBESTOS PRODUCTS COMPANY,<br>        Defendant/Third Party<br>        Plaintiff,<br><br>RAYTECH CORPORATION,<br>        Intervening Third Party<br>        Plaintiff.<br><br>    vs.<br><br>UNITED STATES FIDELITY AND<br>GUARANTY COMPANY,<br>WESTCHESTER FIRE INSURANCE<br>COMPANY and NATIONAL UNION FIRE<br>INSURANCE COMPANY,<br>        Third Party Defendants. | 1:97-cv-00027-RLY/TAB |

**ENTRY ON (1) RAYBESTOS PRODUCTS COMPANY'S MOTION TO VACATE
ARBITRATION AWARD and (2) WESTCHESTER FIRE INSURANCE
COMPANY'S MOTION FOR ORDER CONFIRMING ARBITRATION AWARD
AND ENTRY OF FINAL JUDGMENT**

This matter comes before the court upon Raybestos Products Company's

("Raybestos") and Raytech[1] Corporation's ("Raytech") motion to vacate an arbitration

---

[1] Pursuant to the Stipulated Award entered into on March 16, 2006, Raytech is bound by the Panel's Memorandum and Order on Cross Motions for Summary Determination as if it were a party to the underlying arbitration. Raytech thereafter moved to intervene in Raybestos'

1

award. Westchester Fire Insurance Company ("Westchester"), as the prevailing party, moves for an order confirming the arbitration award and seeks an entry of final judgment. The court, having considered the briefs and exhibits, and having heard the oral argument of the parties, finds that the award should be **CONFIRMED**.

**I.      Background Facts and Procedural History**

This case has a long and rather interesting background. This case came to the court in 1997 when Reliance Insurance Company instituted a declaratory judgment action against Raybestos requesting that this court declare that the insurance policies Reliance issued to Raybestos did not provide coverage for the alleged environmental contamination in Shelly Ditch, which is property located adjacent to Raybestos' manufacturing facility in Crawfordsville, Indiana. After several years of litigation, Reliance filed for bankruptcy. This prompted Raybestos to file a third-party complaint against its other insurers, United States Fidelity and Guaranty Company ("USF&G"), National Union Fire Insurance Company ("National Union"), and Westchester on February 12, 2002. The action against USF&G, National Union, and Westchester sought a declaration seeking recovery from these insurers for the clean-up of Shelly Ditch under the insurance policies issued to Raybestos.

On May 14, 2002, and July 3, 2002, USF&G and Westchester respectively moved the court to stay the action and to compel arbitration under Sections 3 and 4 of the Federal

---

motion to vacate. The court granted the same on August 31, 2006. For simplicity's sake, the court will refer to the movant as Raybestos throughout this opinion.

Arbitration Act ("FAA").  The arbitration provisions read as follows:

> Should any dispute arise out of or related to this endorsement and contract of insurance which cannot be resolved in the normal course of business with respect to the validity or interpretation of this insurance contract, or the performance of the respective obligations of the parties to this insurance contract, then, upon written demands of either party to the contract, the matter or matters upon this agreement cannot be reached shall be settled by arbitration in accordance with the rules of the American Arbitration Association, or the Defense Research Institute arbitration program.  The election as to which of these arbitration programs will be used will be made by the party to this contract who did not make written demand for arbitration.  If that party fails to make that election within twenty days, then the party making written demand for arbitration shall have the right to make that election.  It is agreed that no award for punitive damages may be made in any arbitration proceeding regardless of the rules of the arbitration program selected.

On February 11, 2003, the court denied the motions to stay and to compel arbitration.  By an opinion dated August 27, 2004, the Seventh Circuit Court of Appeals reversed.  Pursuant to the Seventh Circuit's opinion, the court entered an order on October 18, 2004, directing the parties to arbitrate "in accordance with the Rules of the American Arbitration Association [("AAA")] and the Federal Arbitration Act."  Raybestos thereafter filed its Demand for Arbitration Under Indiana Law.  Westchester objected.  Pursuant to AAA Rule R-10, the AAA selected Chicago, Illinois as the locale.

Each party filed a Motion for Summary Determination together with briefs and supporting papers.  On July 6, 2005, the three-member Panel (all former judges) heard oral argument.  On August 10, 2005, the Panel issued its Decision granting Westchester's Motion for Summary Determination[2] and denying Raybestos' Motion for Summary

---

[2] Raybestos settled its claims against USF&G and National Union.

3

Determination as moot. The Panel found that there "is nothing in the arbitration provision or in any other policies that compels the application of the substantive law of any particular jurisdiction." *See* Memorandum and Order on Cross Motions for Summary Determination, Raybestos' Ex. 2 at 6 ("Panel Decision"). The Panel further found that under Seventh Circuit case law, it was free to interpret the insurance contract according to its collective best judgment, and determined that the absolute pollution exclusion in the insurance policy it purchased from Westchester barred Raybestos' claim. *Id.* at 4, 6.

## II.   Discussion

A district court's review of an arbitral award is extremely limited. *Butler Mfg. v. United Steelworkers of Am.*, 336 F.3d 629, 632 (7th Cir. 2003); *Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 153-54 (7th Cir. 1994). Section 10 of the FAA provides the grounds upon which an award may be vacated:

> (1)   where the award was procured by corruption, fraud, or undue means;
>
> (2)   where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10. Aside from the grounds enumerated in section 10 of the FAA, the court may only consider whether the arbitration award was in manifest disregard of the law.

*Wise v. Wachovia Securities*, 450 F.3d 265, 268 (7th Cir. 2006).

> **A.     The Panel did not exceed their powers by failing to apply substantive law to the absolute pollution exclusion contained within the parties' contract of insurance.**

Raybestos challenges the Panel's decision as being in manifest disregard of the law. Specifically, it argues that the Panel refused to apply Indiana law (or any state's substantive law) to reach its decision, although the Panel was clearly aware of the law and that it (the law) applied to this case. If the Panel had applied Indiana law to guide its interpretation of the absolute pollution exclusion at issue, the Panel's decision would have been in Raybestos' favor. This is because, in 1996, the Indiana Supreme Court declared that the absolute pollution exclusion is ambiguous and thus unenforceable. *See American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996); *see also Seymour Mfg. Co., Inc. v. Commercial Union Ins.* Co., 665 N.E.2d 891 (Ind. 1996) (issue was duty to defend rather than coverage); *Travelers Indem. Co. v. Summit Corp.*, 715 N.E.2d 926 (Ind.Ct.App. 1999). The Panel was clearly aware of this fact. Indeed, in its Decision, the Panel noted that "Indiana is the only jurisdiction, of 48 that have ruled on the issue, that has declared the pollution exclusion ambiguous and, as a matter of law, unenforceable to bar claims arising out of a government-mandated environmental clean-up." Panel Decision at 2.

The manifest disregard of the law standard requires vacatur if the arbitrators "deliberately disregarded what they knew to be the law in order to reach the result they did." *Heath Services Management Corp. v. Hughes*, 975 F.2d 1253, 1267 (7th Cir. 1992). The Seventh Circuit has since "defined 'manifest disregard of the law' so narrowly that it

5

fits comfortably under the first clause of the fourth statutory ground – 'where the arbitrators exceeded their powers.'" *Wise v. Wachovia Securities*, 450 F.3d 265, 268 (7th Cir. 2006); *see also George Watts & Son, Inc. v. Tiffany and Co.*, 248 F.3d 577, 581 (7th Cir. 2001); *Baravati v. Josephthal, Lyons & Ross*, 28 F.3d 704, 706 (7th Cir. 1994).  The manifest disregard standard is thus "confined [] to cases in which arbitrators 'direct the parties to violate the law.'" *Wise*, 450 F.3d at 268-69; *George Watts & Son*, 248 F.3d 580-81.  At oral argument, Raybestos' counsel acknowledged the narrow reading of the manifest disregard standard in this circuit, and argued, in the alternative, that the Panel exceeded their powers under 9 U.S.C. § 10(4) by failing to apply substantive law to the absolute pollution exclusion contained within the Westchester insurance policy.

The powers bestowed upon the Panel are limited to those set forth in the parties' arbitration agreement and the rules of the AAA.  *See e.g., Butler Mfg.*, 336 F.3d at 632.  As noted by the Panel, the arbitration agreement at issue did not require the Panel to apply the substantive law of Indiana or of any jurisdiction.  (*See* Section I at 2-3 of the court's opinion).  Thus, under Seventh Circuit case law, the Panel was free to interpret the contract without regard to substantive law:

> It is commonplace to leave the arbitrators pretty much at large in the formulation of remedies, just as in the formulation of the principles of contract interpretation. [Citations omitted].  So far as appears, that is what the parties intended here. . . Silence implies – given the tradition of allowing arbitrators flexible remedial discretion – the absence of categorical limitations.  Since that is the norm, we assume that the parties would have said something in the arbitration clause had they wanted to depart from it.

*Baravati*, 28 F.3d at 710; *see also* Panel Decision at 4.

Moreover, the AAA rules do not require the application of substantive law. AAA Rule 43 permits an arbitrator to render "any remedy of relief that the arbitrator deems just and equitable within the scope of the agreement of the parties, including, but not limited to, specific performance of the contract." *See* Panel Decision at 5. The Panel reasonably concluded that because "the parties incorporated the AAA rules in the arbitration agreement, which include Rule 43, but did not specify a body of controlling substantive law, they impliedly authorized the arbitrators to determine, without a traditional choice-of-law analysis,[3] what criteria to apply in reaching a just and equitable decision." *Id.*

Having determined that the Panel did not exceed its powers, the court must uphold the Panel's award so long as the Panel interpreted the absolute pollution exclusion. *See Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1195 (7th Cir. 1987) ("[T]he question for decision by a federal court asked to set aside an arbitration award . . . is not whether the arbitrator or arbitrators erred in interpreting the contract; it is not whether they clearly erred in interpreting the contract; it is not whether they grossly erred in interpreting the contract; it is whether they interpreted the contract. If they did, their interpretation is conclusive."); *see also Wise*, 450 F.3d at 269 ("[T]he issue for the court is not whether the contract interpretation is incorrect or even wacky but whether the arbitrators had failed to interpret the contract at all, [citations omitted], for only then were they exceeding the

---

[3] The Panel explained that even if it engaged in a traditional choice-of-law analysis, it would have found that Indiana law did not apply, and thus, the Panel's decision would have been the same. It reasoned in part: "The parties would not have reasonably expected to apply the law of the only state whose law would invalidate the pollution exclusion." *See* Panel Decision at 8.

7

authority granted to them by the contract's arbitration clause."). The Panel did interpret the absolute pollution exclusion and, as previously noted, "determine[d] that it plainly and unambiguously exclude[d] the costs of the government-mandated clean-up of sites contaminated by pollutants." Panel Decision at 6. Accordingly, the court finds the Panel's interpretation of the absolute pollution exclusion contained within the Westchester insurance policy is conclusive and binding.

### B.     Public Policy

Raybestos also argues that the arbitrators' award is against public policy. In order to vacate an award under the "public policy exception" the court must undertake a two-step analysis. "First, [the court] inquire[s] whether a well-defined and dominant public policy can be identified. If so, [the court] must then determine whether the arbitrator's award, as reflected in his interpretation of the agreement, violated the public policy." *Chicago Fire Fighters Union Local No. 2 v. City of Chicago*, 751 N.E.2d 1169 (Ill.App. 2001). In ascertaining the existence of public policy, "[the court] look[s] to the constitution, statutes and relevant judicial opinions." *Id.*

Raybestos' argument is premised upon two Indiana cases: *American States Ins. Co. v. Kiger*, 662 N.E.2d 945 (Ind. 1996); *Travelers Indem. Co. v. Summit Corp.*, 715 N.E.2d 926 (Ind.Ct.App. 1999). In Indiana Courts held the pollution exclusions contained within the relevant insurance policies were ambiguous, and therefore unenforceable. *Kiger*, 662 N.E.2d at 949; *Travelers*, 715 N.E.2d at 935. Raybestos contends that these cases "make clear that pollution exclusions in insurance policies

violate the public policy of Indiana." Memorandum of Law in Support of Raybestos' Motion to Vacate at 17. Significantly, public policy did not play a role in the outcome of those decisions. Rather, these cases were decided by applying the principles of contract interpretation.

Raybestos also argues that the Indiana General Assembly passed legislation which would have overturned *Kiger* and its progeny, but was vetoed by the Governor, also supports its position. *Id*. They quote the Governor as concerned that the legislation "could adversely affect large and small Indiana businesses who manufacture or use products that would be considered pollutants under this bill . . . The insurance industry can address the problem by drafting a clear and unambiguous contractual pollution exclusion." *Id*. The court is unable to determine what role public policy played in either the legislation or in the Governor's veto. In fact, Raybestos acknowledges that the legislation was precipitated by the efforts of a lobbying group – the Insurance Institute of Indiana.

Because Raybestos failed to identify a well-defined and dominant public policy, the court finds the Panel's decision did not violate the public policy of Indiana.

### III. Conclusion

For the reasons explained above, the court **CONFIRMS** the Panel's award in favor of Westchester Fire Insurance Company. Raybestos Products Company's Motion to Vacate Arbitration Award, joined by Raytech Corporation (Docket # 9), is hereby **DENIED**, and Westchester Fire Insurance Company's Motion for Order Confirming

Arbitration Award and Entry of Final Judgment (Docket # 14) is **GRANTED**.  Judgment will be entered accordingly.

**SO ORDERED** this  24th   day of January 2007.

                                                            RICHARD L. YOUNG, JUDGE
                                                            United States District Court
                                                            Southern District of Indiana

Electronic Copies to:

Alfred L. Buchanan
MICHAELS & MAY PC
abuchanan@michaelsmay.com

Jeffrey D. Claflin
PLEWS SHADLEY RACHER & BRAUN
jclaflin@psrb.com

Jeffrey D. Featherstun
PLEWS SHADLEY RACHER & BRAUN
jfeather@psrb.com

G. Ronald Heath
HOOVER HULL LLP
grheath@hooverhull.com

Martha S. Hollingsworth
BINGHAM MCHALE, LLP
mhollingsworth@binghammchale.com

Karl L. Mulvaney
BINGHAM MCHALE, LLP
kmulvaney@binghammchale.com

Brett E. Nelson
PLEWS SHADLEY RACHER & BRAUN
bnelson@psrb.com

George M. Plews
PLEWS SHADLEY RACHER & BRAUN
gplews@psrb.com

Tracy Alan Saxe
SAXE DOERNBERGER & VITA
tas@sdvlaw.com

Jeffrey A. Townsend
PLEWS SHADLEY RACHER & BRAUN
jtownsend@psrb.com

Thomas E. Wheeler II
LOCKE REYNOLDS LLP
twheeler@locke.com

Mark W. Zimmerman
CLAUSEN MILLER PC
mzimmerman@clausen.com


Copies to:

Brian E. Mahoney
COHN BAUGHMAN & MARTIN
333 West Wacker Drive
Chicago, IL 60606

Peter G. Bora
CLAUSEN MILLER P.C.
10 South LaSalle Street
Chicago, IL 60603-1098

Chris Phillips
HARTFORD FINANCIAL SERVICES
Cambridge Integrated Solutions
5 Hanover Square
New York, NY 10004